| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:16-CR-45(2) |
| | § | |
| MARIBEL RUIZ | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Maribel Ruiz's ("Ruiz") *pro se* Motions for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) and for Appointment of Counsel (## 117, 118), wherein she asks the court to grant her compassionate release based on her medical condition and to appoint counsel to assist her in seeking compassionate release. The Government filed a response in opposition to the motions (#120). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Ruiz's motions for compassionate release. Having considered the pending motions, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.    Background

On April 14, 2016, a grand jury in the Eastern District of Texas returned a one-count Indictment charging Ruiz and two codefendants with Conspiracy to Possess with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine or 50 Grams or More of Methamphetamine (actual), in violation of 21 U.S.C. § 846. On October 7, Ruiz pleaded guilty to Count 1 of the Indictment pursuant to a non-binding plea agreement. On February 22, 2017, the court sentenced her to 262 months' imprisonment,

followed by a 5-year term of supervised release.  On June 27, 2018, the court reduced her term of imprisonment to 175 months.  Ruiz is currently housed at Federal Correctional Institution Dublin ("FCI Dublin"), located in Dublin, California.  Her projected release date is June 9, 2029.

II.    Appointment of Counsel

Ruiz requests the appointment of counsel to assist her in filing a motion for compassionate release under 18 U.S.C. § 3006A.  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the

discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Here, Ruiz is not entitled to the appointment of counsel to assist her with seeking compassionate release under 18 U.S.C. § 3006A.  *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings.").  Ruiz provides no basis for the court to conclude that the appointment of counsel would benefit her or the court in addressing her motions.  A motion "for compassionate release is not particularly complex factually or legally."

*United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see*

*United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).  In any

event, Ruiz has failed to raise any potentially viable claims or any factually or legally complex

issues that could arguably justify the appointment of post-conviction counsel.  Ruiz is 32 years old,

and there is no indication that she is seriously ill, disabled, or otherwise a candidate for

compassionate release.  Thus, the court finds that the discretionary appointment of counsel is not

warranted.  *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain

circumstances when "the court determines that the interests of justice so require").  Accordingly,

Ruiz's motion for appointment of counsel is denied.

III.   Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into

law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part,

amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to

reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or
> upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the [BOP] to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised release with or
> without conditions that does not exceed the unserved portion of the original term
> of imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in
> > prison, pursuant to a sentence imposed under section 3559(c), for the
> > offense or offenses for which the defendant is currently imprisoned, and a
> > determination has been made by the Director of the [BOP] that the

4

> defendant is not a danger to the safety of any other person or the
> community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he

exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.   Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Ruiz appears to have exhausted her administrative remedies.  On May 15, 2021, Ruiz submitted a request for compassionate release to Warden R. J. Garcia ("Warden Garcia"), the warden of the facility where Ruiz is housed.  On May 26, 2021, Warden Garcia denied Ruiz's request, explaining that she did not meet the requirements for compassionate release or home confinement.  Although Ruiz complied with the exhaustion requirement before filing her second motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to release her from confinement.

B.   <u>Criteria for Release</u>

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release she must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, she must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.   Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.   Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.   Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on her own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392. Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

1.    Medical Condition

In her motion, Ruiz, age 32, contends that she is eligible for compassionate release due to her medical problems.  Specifically, Ruiz claims to be vulnerable to COVID-19 because she suffers from asthma, obesity, and a "growing Limphoma" as well as anxiety and depression. Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, when Ruiz was interviewed in connection with her Presentence Investigation Report ("PSR"), prepared on December 14, 2016, and later revised on January 11, 2017, "[n]o physical health problems were reported."  Nevertheless, she was described as 5 feet 3 inches tall and weighing 200 pounds, giving her a body mass index ("BMI") of 35.4, which is considered obese.[4]

According to Ruiz's BOP medical records compiled on May 25, 2021, she has been diagnosed as having asthma (exercise-induced), a benign lipomatous neoplasm, constipation, and post-traumatic stress disorder.  A medical record dated November 18, 2020, indicates that Ruiz

---

[4] According to the Centers for Disease Control ("CDC"), a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

has experienced periodic breathing difficulties since she was a child.  As the Government points out, Ruiz has been diagnosed as having a lipoma, not lymphoma, as she appears to suggest in her motions.  The Mayo Clinic's website describes a lipoma as "a slow-growing, fatty lump that's most often situated between [the] skin and the underlying muscle layer . . . a lipoma isn't cancer and usually is harmless."   In a medical record dated May 3, 2021, Keith Tang, M.D., confirms that an ultrasound performed in October 2020 indicated that Ruiz has a lipoma in her mid back, which is scheduled to be removed on August 19, 2021.  Ruiz is prescribed an Albuterol inhaler and a Mometasone Furoate inhaler to manage her asthma, Bisacodyl to treat her constipation, Ibuprofen for unspecified pain, and Oxcarbazepine for post-traumatic stress disorder.  Ruiz's medical records further reveal that on May 3, 2021, Ruiz weighed 272 pounds, resulting in a BMI of 48.2, rendering her morbidly obese, according to the National Institutes for Health.  Nevertheless, Ruiz is classified as a BOP Medical Care Level 1 inmate.  Pursuant to the BOP's Clinical Practice Guidance, dated May 2019,  Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

None of Ruiz's medical conditions are terminal or substantially diminish her ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Ruiz's conditions are well controlled with medication.  *See id*.  The court acknowledges that some of Ruiz's underlying medical conditions, according to the CDC  website, can make her more likely to become severely

ill should he contract COVID-19[5]; nonetheless, such commonplace afflictions as obesity and asthma do not make Ruiz's case "extraordinary." *See id*. at 434.

According to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight. Moreover, 20.4 million adults in the United States, 7.7% of the adult population, have asthma. Due to their prevalence, obesity and asthma cannot be deemed "extraordinary" in order to merit compassionate release. *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Thompson*, No. 3:18-CR-0573-B-11, 2021 WL 1966847, at *3 (N.D. Tex. May 17, 2021) (finding that a defendant's asthma, which was treated with an albuterol inhaler, did not rise to the level of extraordinary and compelling circumstances warranting compassionate release); *United States v. Holley*, No. 4:15-CR-265-4, 2021 WL 1581557, at *3 (S.D. Tex. Apr. 22, 2021) (denying compassionate release where the 28-year-old defendant claimed he had an increased risk of serious illness resulting from COVID-19 due to his asthma); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United*

---

[5] In relevant part, the CDC states that adults who have chronic lung conditions (such as asthma) or who are overweight or obese can be more likely to become severely ill from COVID-19.

*States v. Pagan Zapata*, No. 3:18-CR235-S, 2020 WL 4464660, at *1 (N.D. Tex. Aug. 3, 2020) (finding that the defendant's long term asthma, which was being treated with an inhaler, did not merit compassionate release); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

In this instance, Ruiz's BOP records and Probation's investigation reveal that she is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food service, and her current work assignment is as a commissary clerk. She is able to provide self-care in the institutional setting and is not limited in her activities of daily living. Indeed, Ruiz's asthma and obesity did not hamper or prevent her from committing her offense of conviction. Thus, Ruiz has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce her sentence.

Ruiz's PSR further reveals that she has a history of substance abuse. Regarding Ruiz's history of drug abuse, courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see United States v. Chambliss,* 948 F.3d 691, 694 (5th Cir. 2020). Here, according to her PSR, Ruiz has a history of abusing methamphetamine, smoking it on a regular basis up to the time of her arrest. Her BOP medical records confirm that Ruiz has been diagnosed as having a severe stimulant related disorder (amphetamine type substance). Yet, she declined residential drug treatment in

12

September 2019.  Therefore, granting Ruiz early release could facilitate her drug abuse, as she would gain unfettered access to over-the-counter medications and illegal drugs outside the BOP.

 2. Other Reasons

Ruiz also seeks compassionate release due to the presence of COVID-19 in prison.  In her motions, Ruiz contends that she is a vulnerable individual according to the CDC guidelines because of her pre-existing medical conditions and that the outbreak of the corona virus could not have been foreseen by the court at the time of sentencing.  Yet, according to her BOP medical records, Ruiz tested positive for the virus on December 13, 2020, was placed in isolation, received treatment, and had recovered from the virus by December 24, 2020, a period five to six months before she filed her motions seeking compassionate release in May and June 2021.  Moreover, as of July 26, 2021, the figures available at www.bop.gov list 1 inmate (out of a total inmate population of 746) and 2 staff members at FCI Dublin as having confirmed positive cases of COVID-19, 225 inmates and 22 staff members who have recovered, and 0 inmates who succumbed to the disease.  Thus, it appears that the facility where Ruiz is housed is handling the outbreak appropriately and providing adequate medical care.

Although Ruiz expresses legitimate concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak within her correctional facility or that the facility is specifically unable to treat Ruiz, if she were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

13

independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Ruiz, have already contracted and recovered from the virus.  *See*, *e.g.*,

14

*United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff.  To date, the BOP has administered approximately 202,910 doses of the vaccine. According to bop.gov, FCI Dublin, where the defendant is housed, has fully inoculated 712 inmates and 175 staff members.  Indeed, according to Ruiz's BOP medical records, she received the first dose of the Moderna vaccine on March 31, 2021, and the second dose on April 28, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have already been vaccinated for COVID-19.  *See United States v.*

*Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection."); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

Moreover, it is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693.   In exercising its discretion, the court finds that Ruiz has failed to

establish that her medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce her sentence to time served and release her from prison.

C.     Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.   As noted above, it is well recognized that "[c]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *Chambliss*, 948 F.3d at 693.  Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances.  *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal").

The nature and circumstances of Ruiz's offense of conviction entail her participation in an international drug-trafficking conspiracy spanning from January 2015 through April 13, 2016.  Her role in the offense was to supply coconspirators with kilogram quantities of methamphetamine from various sources, which was imported from Mexico, for distribution to others in the Eastern and Northern Districts of Texas.  In February 2016, agents discovered approximately 492 grams of

17

methamphetamine, a precision rifle, and 456 rounds of various types of ammunition for multiple types of firearms during a search of her residence, which she shared with her boyfriend, his father, his brother, and three small children.  Ruiz consented to the search upon being notified that her boyfriend had just been arrested on drug charges after approximately 2 kilograms of heroin and a loaded firearm were recovered from his vehicle.  Ruiz's temporary driving permit and her phone bill were found in the same vehicle as the drugs and firearm.  In April 2016, a confidential source ("CS") met Ruiz at a convenience store at which time she and three minor children got into the CS's vehicle and traveled to an apartment, where Ruiz picked up about 1 kilogram of methamphetamine.  During the transaction, Ruiz spoke to an individual with an international phone number from Mexico.  Later in April, the CS met with Ruiz who provided the CS with approximately 10 kilograms of methamphetamine.  The CS and Ruiz engaged in a conversation in her vehicle which was recorded.  During the conversation, they discussed the drug transaction and Ruiz asked for a sample of the methamphetamine she had just delivered.  In addition, Ruiz gave a cellular phone to the CS with instructions for him to use the phone to communicate solely with her.  Throughout the transaction, there were three minor children inside the vehicle.  After Ruiz was detained, a methamphetamine pipe with residue was recovered from her.  In the Factual Basis accompanying her guilty plea, Ruiz admitted that the conspiracy involved 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms or more of methamphetamine (actual).

In addition, as noted above, Ruiz has a history of substance abuse in which, among other substances, she frequently used methamphetamine.  In view of the nature and circumstances of Ruiz's offense of conviction, her history of substance abuse, and her repeated exposure of young

children to her drug-dealing activities, the court cannot conclude that Ruiz's early release from prison would afford adequate deterrence or protect the public, as she continues to pose a danger to other persons and to the community as a whole.

Furthermore, granting Ruiz compassionate release would fail to provide just punishment for her offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Ruiz after she has served only about 62 months (or approximately 35%) of her 175-month sentence would similarly minimize the impact of her crime and the seriousness of her offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

IV.    Conclusion

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Ruiz*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Ruiz's track record is similarly a poor one.  In this instance, there is no reason to believe that Ruiz would not revert to her prior drug-dealing and drug-abusing behavior if released from prison at this time.

In sum, Ruiz has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Ruiz's *pro se* Motions for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) and for Appointment of Counsel (## 117, 118) are DENIED.

SIGNED at Beaumont, Texas, this 26th day of July, 2021.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE